## ROTHENBERG In Re—DISBARMENT PROCEEDINGS

Ohio Appeals, 2nd Dist, Montgomery Co
No. 991.   Decided Feb 3, 1931

A. H. Dwyer and W. S. Rhotehamel, Dayton, for Rothenberg.

Carroll Sprigg and S. G. Kusworm, Dayton, for the Bar Association.

ALLREAD, J.

The sheriff's office attempted to get another interview between Rothenberg and Green and after considerable telephoning finally secured Rothenberg's presence at the jail where he had a conversation as previously stated where these police detectives were secreted and heard the conversation. There was some conversation between the prisoner and Rothenberg upon this occasion as to his failure to produce the gun. Rothenberg made the statement that he had been unable up to date to get anybody to endeavor to carry the gun past the deputy sheriff. This agreement between Rothenberg and his client Green is clearly proven and there is nothing to indicate that there was any agreement between Rothenberg and any of the deputy sheriffs which would in any way affect the Rothenberg transaction and conversation with Green. The fact that he went ahead and secured the gun in the city of Cincinnati under circumstances which might indicate a criminal use of the gun and Rothenberg admits that there were second-hand stores in Dayton where a gun might have been purchased if the use had been legal and the only inference that can arise from the fact that the gun was purchased in Cincinnati would be that the use of the gun by Rothenberg or some one to whom he would transfer the gun was not intended to be legal. We think the evidence is amply sufficient to sustain the disbarment upon the first ground. It seems to the court that Rothenberg misconceived his duties to the court and his duties to his client. It is undoubtedly the duty or at least the privilege of an attorney to take the case of a criminal after he has committed the crime to advise him and even to try the case with the idea of securing his acquittal or the reduction of the offense, but we think a lawyer has no right to be concerned with criminals in the commission of offenses against the state or in securing the criminal's escape from the custody of the officers. This is not only a violation of the law but as well a violation of the ethics of his profession. An attorney holds a position of great confidence with respect to the court and as well the public.

This court held in the case of Mills against Thomas, Warden, that an attorney has a right to consult his client even in the custody of the Warden of the Penitentiary and have a private conference with him free from any interference by the Warden or any of the deputies. This case was taken to the Supreme Court where the judgment was affirmed, Thomas v Mills, 117 Oh St, 114. This would place an enormous advantage to a lawyer who does not have the proper qualifications of an attorney and would leave the lawyer who was inclined to be dishonorable a right which the courts did not intend he should have. So that the attitude of the lawyer toward his client is one of the highest integrity and the courts are strongly inclined to sustain his attitude to his client upon that theory. Whenever, therefore, it is clearly proven by evidence that he has violated that obligation he must be disbarred.

We are aware that Rothenberg was a young man who had worked nights and went through the law school in the city of Dayton and was admitted to practice in August of 1928, just about a year before these charges were preferred. It is said that he comes of a good family and that his reputation prior to his admission to the bar has always been honorable. While this may be and is true, yet in view of the importance of a correct attitude of the members of the profession, especially in dealing with criminals, we cannot escape the idea that the acts shown in this record are sufficient to justify the disbarment of Rothenberg.

The judgment of the Court of Common Pleas must, therefore, be affirmed.

KUNKLE, PJ, and HORNBECK, J, concur.